Michael H. COTE, Kathy J. Cote, and David Cote, ppa Kathy Cote

v.

DURHAM LIFE INSURANCE COMPANY and United Plans, Inc.

Civ. No. H–90–90 (PCD).

United States District Court, D. Connecticut.

Jan. 3, 1991.

David W. Cooney, RisCassi & Davis, Hartford, Conn., for plaintiffs.

Joseph T. Sweeney, Halloran & Sage, Hartford, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiffs commenced this action in Connecticut Superior Court alleging breach of contract (Counts One and Two), bad faith (Counts Three and Four), unfair insurance practices (Counts Five and Six), unfair trade practices (Counts Seven and Eight), and intentional infliction of emotional dis-

tress (Count Nine) resulting from cancellation of their medical insurance. Defendants, alleging diversity, removed the case to this court, pursuant to 28 U.S.C. § 1441(a). Plaintiffs moved for leave to amend to add two counts—Counts Ten and Eleven under the Employee Retirement Income Security Act of 1974 (ERISA),[1] 29 U.S.C. § 1001, *et seq.*, which are not subject to this motion. Defendants move for summary judgment on the first nine counts on the basis that those claims relate to an employee benefit plan covered by ERISA and thus those state claims are preempted by Section 514 of ERISA, 29 U.S.C. § 1144(a).

*Facts*

Plaintiffs Michael H. Cote and Kathy J. Cote met with Paul Ferry, an agent of Durham Life Insurance Company ("Durham"), to secure hospital and medical insurance coverage through Ferry's insurance agency. Complaint at ¶¶ 4 & 6. On January 4, 1989, during a meeting between the Cotes and Ferry, plaintiffs answered a series of questions put forth by Ferry and filled out the appropriate application for the health insurance. *Id.* at ¶ 5. Durham issued an insurance policy to the plaintiff Michael Cote "for family medical and hospital care and which policy, by its terms, provided that coverage for his son, the minor plaintiff, David Cote." *Id.* at ¶ 7.

The day before the application for insurance was submitted to the agent, Mrs. Cote took David to a pediatrician due to a swollen gland in his neck. The family doctor, Dr. Finn, felt that David had an ear infection and/or a swollen gland and prescribed an antibiotic. The condition did not clear up and a biopsy was done in late April. On May 5, 1989, David Cote was diagnosed as suffering from Hodgkin's Disease, which has required extensive medical treatment. *Id.* at ¶ 8.

Plaintiffs, relying on the Durham policy, "permitted their existing health insurance coverage and other family hospital and medical insurance coverage to lapse and they did not seek other hospital and medical coverage" to their detriment. *Id.* at ¶ 12. Plaintiffs were left without insurance for medical expenses when Durham, through its agent United Plans, rescinded their policy on June 29, 1989. *Id.* at ¶¶ 2, 10 & 12.

*Discussion*

Summary Judgment Standard

Summary judgment will be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate that there are no material issues of fact in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs.*, 834 F.2d 54, 57 (2d Cir.1987). In determining whether there is a genuine issue of fact in the case, the court must "resolve all ambiguities and draw all reasonable inferences against the moving party." *Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 313 (2d Cir.1981).

1. *Employee Welfare Benefit Plan*

██ Section 514 provides that ERISA:

shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [covered by the statute]....

State claims relating to employee benefit plans are preempted by ERISA. *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 521–526, 101 S.Ct. 1895, 1905–1908, 68 L.Ed.2d 402 (1981); *Cooke v. Lynn & Sand Stone Co.*, 673 F.Supp. 14, 28 (D.Mass. 1986); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 145 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). At issue is whether plaintiffs' policy is part of an ERISA plan.

An "employee welfare benefit plan" is defined as:

(1) a 'plan, fund, or program' (2) established or maintained (3) by an employer

---

**1.** Absent objection and pursuant to Fed.R.Civ.P. 15(a), plaintiffs' motion to amend is granted

simultaneously herewith.

or by an employer organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness ... (5) to the participants or their beneficiaries.

*Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988) (en banc), *cert. denied,* — U.S. ——, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989), citing *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982) (en banc). "[A] plan, fund or program under ERISA, is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan,* 688 F.2d at 1373. Thus, the existence of an ERISA plan is to be determined by the surrounding facts and circumstances. *Id.*

The Department of Labor has issued regulations which exclude certain insurance programs from ERISA's definition of "employee welfare benefit plan" if one or more of the criteria are met:

(j) *Certain group or group-type insurance programs.* For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in con-

nection with the program, other than reasonable compensation, excluding any profit, or administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. 2510.3–1(j) (1987). "The purpose of this section is to clarify the definition of the terms 'employee welfare benefit plan' and 'welfare plan' for purposes of Title I of the Act and this chapter by identifying certain practices which do not constitute employee welfare benefit plans for those purposes."

In determining whether an insurance program is an ERISA plan, a primary factor is the level of employer participation. "To be an employee welfare benefit plan ... an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan fund, or program." *Donovan,* 688 F.2d at 1373. Minimal employer participation is insufficient for an insurance program to be deemed an ERISA plan. *See Id.* at 1375 (bare purchase of insurance does not by itself constitute an ERISA plan); *Taggart Corp. v. Life & Health Benefits Admin., Inc.,* 617 F.2d 1208, 1211 (5th Cir.1980) *cert. denied* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981) (same); *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987) (mere advertising of group insurance insufficient to establish an ERISA plan).

It is undisputed that Michael Cote signed, on behalf of Cote Building, Inc., as owner,[2] a Participation Application and Agreement. Affidavit of Virginia Hodson, Exhibit 3. Cote Building, Inc., as an employer, thus established a plan to provide medical insurance for its employees and their dependents. Cote Building, Inc. agreed "to be bound by all the terms and provisions of the policy or policies insuring such plan issued to the Trustee." *Id.* Under the Participation Application and Agreement, Cote Building, Inc. also agreed:

---

**2.** Cote Building, Inc. is listed as the applicant and described as a corporation of which Mi-

chael Cote describes himself as owner. Affidavit of Virginia G. Hodson, Exhibit 3 at 3.

to contribute at least 25% of the overall cost of insurance for its employees ... to make necessary payroll deductions for any employee share of the cost of the insurance ... to remit the total premiums for all insurance as premiums become due ... [and to have] United Plans Inc. administer by billings, [their] share of the premiums due under any insurance policy issued to the trust ... [and to] pay United Plans a monthly service fee of $18.00....

*Id.* at 4. The unambiguous language of the contract demonstrates that Cote Building, Inc. established an insurance plan for its employees, over the administration of which it retained some control. *Gottesman v. Aetna Ins. Co.*, 177 Conn. 631, 634, 418 A.2d 944 (1979) (plain and unambiguous language used in insurance policies must be given its natural and ordinary meaning).

Cote contends that he has done nothing administratively with the plan save sign his name to an insurance contract and make payments. Affidavit of Michael Cote at ¶ 3; Plaintiffs' Memorandum at 14. Plaintiffs further argue that, because United Plans administered the insurance plan, Deposition of Ann MacFarland at 15, the insurance plan is not an ERISA plan. While an employer who merely arranges for a group-type insurance program does not establish an ERISA plan, an employer who makes contributions on behalf of its employees, makes payroll deductions, and assumes responsibility for administration of the plan establishes an ERISA plan. Cote Building, Inc. did not simply arrange for a group-type insurance program and advertise its availability. *Kennesaw*, 809 F.2d at 625. The language of the agreement specifies sufficient participation by Cote Building, Inc. to bring the plan within ERISA.

Cote claims that his "primary intent in signing the [Participation] Application and Agreement was to procure health insurance for [himself] and [his] family." Affidavit of Cote at ¶ 5. While Cote's motivation may have been to secure insurance for himself and his family, the corporation manifested its intent to establish an insurance plan for employees, as conceded in Plaintiffs' Memorandum at 13, and evidenced by the agreement and the insurance certificate. Cote Building, Inc. was required, and agreed, to enroll all, all but one—nine or 75%—of its eligible employees, dependent on the total number of eligible employees. Affidavit of Virginia G. Hodson, Exhibit 4 at 3. Irregardless of Cote's personal motivations, Cote Building, Inc. established an "employee welfare benefit plan" within ERISA.

Relying on the single reference to ERISA and the attendant language in the Participation Application and Agreement, plaintiffs additionally allege that defendants did not intend to establish an ERISA plan. The Participation Application and Agreement provides that:

as an employer we are establishing this plan and that neither United Plans, Inc., the Policyholder Trustees, nor Durham Life Insurance Company ... is acting as 'sponsor' as defined in the Employee Retirement Income Security Act of 1974 (ERISA), and that any compliance under this act that is applicable to the sponsor will be fulfilled by the employer as his own legal counsel may determine.

Plaintiffs contend that this clause, coupled with the lack of any specific mention that the plan established was to be under the ERISA definition, suggests defendants had no such intent. The argument misconstrues the language. By stating that Cote was to be responsible for compliance as a sponsor under ERISA, defendants sought to exculpate themselves from such responsibility. By allocating the responsibility, the clause implicitly suggests that the plan is governed by the Act, which creates the obligation. If the plan was not covered by ERISA, defendants would not have included that provision in the contract, as it would have been unnecessary to do so. The language of the Participation Application and Agreement and the Certificate of Insurance indicate an employee welfare benefit plan within ERISA was intended.

### 2. *Preemption of State Law*

Alternatively, plaintiffs contend that, even if plaintiffs' policy was part of

an ERISA plan, the statutory claims under the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA") are not preempted by ERISA.[3] This district has consistently held that statutory claims are preempted by ERISA. *See e.g., Lazaroff v. Blue Cross & Blue Shield of Connecticut,* Civil No. B–88–519 (TFGD) (D.Conn. Jan. 11, 1989), Ruling on Pending Motions at 5–6 (CUIPA does not regulate the business of insurance under the second McCarran–Ferguson criterion and the remedies provided by CUIPA conflict with the civil remedies provided by ERISA); *Stone v. Blue Cross & Blue Shield of Connecticut,* Civil No. N–88–147 (D.Conn. Jan. 11, 1989), Ruling on Motion to Dismiss at 16–17 (claims under CUIPA and CUTPA preempted by the federal ERISA law); *Fischman,* Ruling on Motion to Dismiss at 7. Plaintiffs' statutory claims are preempted by ERISA.

*Conclusion*

Accordingly, defendants' motion for summary judgment as to Counts One through Nine is granted.

SO ORDERED.

---

**3.** Plaintiffs have apparently abandoned their preemption argument with respect to the state common law claims. Plaintiffs' common law claims constitute alternative causes of action to the collection of plan benefits and are therefore preempted. *Fischman v. Blue Cross & Blue Shield of Connecticut,* Civil No. N–90–229 (PCD) (D.Conn. Dec. 19, 1990), Ruling on Motion to Dismiss at 4–5.