**Nicki ALLMENDINGER and Philip Allmendinger**

v.

**AETNA LIFE INSURANCE COMPANY.**

**No. 2:91CV00329(AHN).**

United States District Court, D. Connecticut.

Aug. 14, 1992.

Joseph Lynch, Halloran & Sage, Hartford, Conn., for plaintiffs.

David Ryan, Robinson & Cole, Hartford, Conn., for defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

This is a breach of contract action pursuant to Connecticut common law, the Connecticut Unfair Insurance Practices Act, Conn.Gen.Stat. § 38a–815 *et seq.* ("CUIPA"), and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a *et seq.* ("CUTPA"), commenced by Nicki Allmendinger and Philip Allmendinger (the "Allmendingers") against Aetna Life Insurance Co. ("Aetna"). The Allmendingers are insureds under a group health insurance policy (the "Policy") issued by Aetna and obtained through Philip Allmendinger's employer, Hartford Thoracic & Cardiovas-

cular Group, P.C. ("Hartford Thoracic"). In turn, Hartford Thoracic provided the Policy to its employees by subscribing to Aetna's group insurance policy (the "Plan") as an employer member of Connecticut Business and Industry Service Corporation ("CBIA"). The Allmendingers seek a declaratory judgment that Aetna is obligated to cover the expenses of Nicki Allmendinger's Protropin treatment for Mosaic Turner's Syndrome as well as money damages. Aetna removed this action to federal court pursuant to 28 U.S.C. § 1441(a) and (b) alleging that it arises under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Currently pending is Aetna's motion for summary judgment.[1] For the reasons stated below, the court grants Aetna's motion.

### FACTS

The court finds the following facts to be undisputed:

1. Aetna issued the Policy to CBIA which in turn marketed it to member employers such as Hartford Thoracic who are too small to qualify for a group insurance plan on their own.

2. CBIA is a for profit organization which paid a single premium to Aetna and in turn, collected its own premiums from the individual member subscribers to the Policy.

3. Hartford Thoracic, an employer member of CBIA, subscribed to the Policy and executed a Participation Agreement in order to provide its employees with medical benefits. As an employee of Hartford Thoracic, Philip Allmendinger obtained coverage for himself and his daughter Nicki.

4. Hartford Thoracic contributed all the funds necessary to maintain the Policy for its employees and their dependents.

5. Hartford Thoracic maintains control over certain aspects of the Policy's administration. Specifically, a Hartford Thoracic employee, Chester B. Humphrey, ensures that the names of Hartford Thoracic's employees are added and deleted from the record of employees covered under the Policy.

6. Employer members of CBIA process their own employees' claims under the Policy directly with Aetna.

### DISCUSSION

■ In a motion for summary judgment, the moving party bears the burden of establishing that no genuine issues of material fact are in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All factual inferences are drawn in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir. 1989). Applying these rules, the court concludes that Aetna is entitled to summary judgment as a matter of law.

■ At issue is whether the Allmendingers' law suit is preempted under federal law. Aetna contends that if the Policy is found to be an "employee benefit plan," the plan is governed by ERISA. Aetna concludes that if the Policy qualifies as an ERISA plan, the Allmendingers' claims, all of which were made pursuant to state law, are preempted by ERISA and the action must be dismissed. The Allmendingers do not dispute Aetna's contention that ERISA preempts all state causes of action involving employee benefit plans. Rather, they insist that the Policy is not an "employee benefit plan" governed by ERISA and that

---

1. The Allmendingers initially filed "Plaintiff's Motion for Summary Judgment on Defendant's Special Defenses and Objection to Defendant's Motion for Summary Judgment" in response to Aetna's motion for summary judgment. (*See* Filing No. 21.) In their motion, however, the Allmendingers expressly request that the court consider their motion as an objection to Aetna's motion for summary judgment rather than as a cross-motion for summary judgment. (*Id.* at 2.)

the state law claims are proper. Accordingly, the sole issue before the court is whether the Policy qualifies as an "employee benefit plan" under ERISA.

Federal courts have defined an employee benefit plan as:

> (1) a 'plan, fund, or program' (2) established or maintained (3) by an employer or by an employer organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness ... (5) to participants or their beneficiaries.

*Cote v. Durham Life Ins. Co.*, 754 F.Supp. 18, 19–20 (D.Conn.1991) (quoting *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988) (en banc), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989)); *see also Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc). In determining whether a policy is an ERISA plan within the meaning of this definition, moreover, the court looks to the surrounding facts and circumstances of the particular case. *Donovan*, 688 F.2d at 1373.

A "primary factor" in this determination is the level of participation in the Policy by Hartford Thoracic, Philip Allmendinger's employer. *See Cote*, 754 F.Supp. at 20. For a policy to qualify as an employee benefit plan under ERISA " 'an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan fund, or program.' " *Id.* (quoting *Donovan*, 688 F.2d at 1373). "Minimal employer participation is insufficient for an insurance program to be deemed an ERISA plan." *Cote*, 754 F.Supp. at 20. Accordingly, crucial to the court's determination in this case is the level of Hartford Thoracic's participation in the Policy.

In analyzing the level of participation in the Policy by Hartford Thoracic, the court finds Judge Dorsey's ruling in *Cote* helpful. In *Cote*, the Court found that plaintiffs' employer, an employer member of a group insurance program, signed a participation application and agreement in order to establish an employee benefit plan. *Id.* at 21. The Court noted that merely ar-

ranging the coverage of an insurance program for employees was insufficient to create an ERISA plan. *Id.* The Court emphasized, however, that plaintiffs' employer did more than arrange coverage but actually maintained and conducted certain administrative responsibilities, made deductions from payrolls, and contributed to the premiums on behalf of its employees. *Id.* Although the signed agreement did not specify that the insurance policy was an ERISA plan, the Court concluded that the employer's level of involvement in maintaining the plan was sufficient to establish an employee welfare plan under ERISA. *Id.*

Here, the court believes that Hartford Thoracic's involvement with the Policy is similar to that of the plaintiffs' employer in *Cote*. Admittedly, the mere signing of the Participation Agreement by Hartford Thoracic with CBIA is insufficient to establish an ERISA plan without more. Clearly, the Participation Agreement is only evidence of the intent of Hartford Thoracic to secure medical insurance for its employees. *See Donovan*, 688 F.2d at 1375. Like the employer in *Cote*, however, Hartford Thoracic did far more than simply sign the Participation Agreement in its efforts to create a medical plan for its employees. Specifically, Hartford Thoracic performed administrative functions with respect to its own employees covered by the Policy. For example, Hartford Thoracic ensures that the recorded list of employees participating under the Policy is accurate by adding new employees' names to the list and deleting the names of employees who depart from the company. Furthermore, Hartford Thoracic, like all CBIA employer members, processes all employee claims arising under the Policy directly with Aetna. Finally, Hartford Thoracic contributes all funds necessary to maintain the Policy for its employees. Hartford Thoracic's direct participation in certain administrative and maintenance aspects of the Policy, its processing of claims for its employees, and its contributions to the Plan on behalf of its employees constitutes sufficient involvement to qualify the Policy as an employee benefit plan under ERISA.

The Allmendingers rely on *Taggart Corp. v. Life and Health Benefits Admin., Inc.*, 617 F.2d 1208 (5th Cir.1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981), in support of their position that the Policy is not an employee benefit plan governed by ERISA. In *Taggart*, the Fifth Circuit held that the group insurance policy to which the plaintiff corporation subscribed was not an employee benefit plan within the meaning of ERISA. *Taggart* rejected the view that ERISA governs the "bare purchases of health insurance where, as here, the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." *Taggart*, 617 F.2d at 1208. The Allmendingers insist that the facts and circumstances surrounding the plan in *Taggart* are analogous to this case and conclude that *Taggart* is dispositive of their claim that the Policy is not an employee benefit plan as a matter of law. The court disagrees.

The court acknowledges that both the *Taggart* plan provider, SMET, and CBIA, the provider in this case, are for profit organizations that enable smaller companies, like Hartford Thoracic, to subscribe to a group insurance policy for which they would otherwise be unable to qualify. Beyond this similarity, however, the cases are distinguishable. In *Taggart*, the court found only that the plaintiff corporation sought to arrange the purchase of an insurance policy for its employees. *Id.* at 1211. *Taggart* concluded that such conduct, without more, was insufficient to establish an ERISA plan. *Id.* Significantly, unlike Hartford Thoracic, the plaintiff corporation in *Taggart* did not maintain administrative responsibilities over the insurance program nor participate in its funding for its single employee participant. As discussed earlier, Hartford Thoracic's level of involvement went beyond a mere purchasing of an employee benefit plan for its employees and their dependents to include Policy maintenance, administration, and funding.

In further reliance on *Taggart*, the Allmendinger's make much of the fact that CBIA's arrangement with Aetna failed to create an ERISA plan. They insist that under any analysis, the arrangement between Aetna and CBIA does not qualify as an employee benefit plan and, therefore, Aetna's claim that the Policy is governed by ERISA must fail. The court notes that it need not concern itself with the Aetna—CBIA relationship to make a determination of whether an employee benefit plan exists in this case. Assuming CBIA's trust does not fall under ERISA's coverage, it is settled law that an employer may still establish a general welfare plan within the meaning of ERISA through its individual participation. *Credit Managers Ass'n v. Kennesaw Life & Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987) (holding that it is the action of the employer which establishes an ERISA employee benefit plan); *Donovan*, 688 F.2d at 1375. These cases suggest that Hartford Thoracic's sole involvement with the operations of the Policy is sufficient by itself to establish an employee benefit plan in this case.

Finally, the court would be remiss if it did not note that *Taggart*'s holding has been narrowed significantly. In *Donovan*, the Eleventh Circuit limited *Taggart* to its unique facts and stated:

> the reasoning of the opinion that Taggart Corporation did not have a 'plan, fund, or program' encourages too broad an interpretation ... If *Taggart* implies that an employer or employee organization that only purchases a group health insurance policy or subscribes to a [group insurance trust] to provide health insurance to its employees or members cannot be said to have established or maintained an employee welfare benefit plan, we disagree.

*Donovan*, 688 F.2d at 1375; *see also Cote*, 754 F.Supp. at 20–21. Since *Taggart* was decided, moreover, even the Fifth Circuit has chosen to confine *Taggart* to its facts. *See Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977–978 (5th Cir.1991); *Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 353 (5th Cir.1991); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241–242 (5th Cir.1990).

Accordingly, the court finds the Allmendingers' reliance on *Taggart* unpersuasive and concludes that ERISA preempts the

state law claims. Aetna, therefore, is entitled to summary judgment in this matter.

CONCLUSION

For the reasons stated above, the court grants Aetna's motion for summary judgment.

SO ORDERED.