**John J. KENNEY, Jr., Plaintiff,**

v.

**ROLAND PARSON CONTRACTING CORP., et al., Defendants.**

**Civ. A. No. 91–1230.**

United States District Court, District of Columbia.

March 31, 1992.

Gregory V. Powell, Steven J. Lewicky, Chevy Chase, Md., for defendants.

Stephen M. Koslow, Rockville, Md., for plaintiff.

## MEMORANDUM AND OPINION

REVERCOMB, District Judge.

Defendant Roland Parson Contracting Corporation is a small masonry firm operated by defendants Roland Parson and his sons Travis and David. Plaintiff John Kenney worked for the defendants as a bricklayer from July 1990 until January 1991 building two parking decks in suburban Maryland under Washington Metrorail construction contracts. Both contracts were subject to the prevailing wage requirements of the Davis–Bacon Act, 40 U.S.C. 276a et seq., which mandate, in addition to payment of a base hourly wage to workers, payment of an hourly fringe benefit component either directly with the workers' wages or in the form of a contribution to an employee benefit plan such as a pension plan.

The defendants admit that they did not pay Mr. Kenney and scores of his fellow workers on the Metro projects the fringe benefits they owed them either by paycheck or indirectly by contribution to a pension plan. The defendants further admit that they intended to establish a pension plan but did not due to ineptitude and lack of funds. The defendants assert, however, without contradiction from the plaintiff, that the Department of Labor has already investigated their Davis–Bacon Act violations, that the Department has determined their liability to plaintiff and 66 others in the amount of $35,000 in back wages owed, and that defendants have begun a payment plan and has paid $4,563.45 to several workers as of February 13, 1992, including $1,696 in full restitution to plaintiff John Kenney.[1]

Plaintiff is before this Court attempting to draw the defendants within the net of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1140 *et seq.* (ERISA) as a vehicle to redress what he contends was defendants' deliberate and tortious retention of their employees' fringe benefits in violation *inter alia* of the fiduciary standards established by ERISA. Plaintiff filed his complaint on May 23, 1991, around the time he initiated the Labor Department probe, seeking certification of a Rule 23(b)(3) class of some 100 former Parson employees, alleging ERISA violations and pendant state law claims in fraud, contract breach, and promissory estoppel. On January 15, 1992, plaintiff moved to amend his complaint to narrow the class certification request to those employees who had worked on the two parking deck jobs, still estimated at more than 100 people, to allege violations under ERISA's fiduciary provisions, 29 U.S.C. Sections 1104 *et seq.*, and Sections 1021(d) and 1132(c)(3), subject to a private right of action under 29 U.S.C. 1132(a), and to add an additional pendant claim of tortious conversion. Under these claims, plaintiff seeks compensatory and punitive damages, attorneys' fees, court costs and fines.

Plaintiff also moved on January 15, 1992, for summary judgment pursuant to Fed. R.Civ.P. 56, and the defendants opposed this motion and class certification on February 13, 1992. This Court heard oral argument on all these matters on February 24, 1992. For the reasons set forth below, plaintiff's motion to amend his complaint is granted and his motions for class certification and summary judgment are denied. In addition, plaintiff's suit is dismissed, pursuant to Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. 1331, for failure to state a federal cause of action, in the absence of which the Court lacks subject matter jurisdiction to consider plaintiffs' claims.

■ The parties appear to agree, and the law seems clear, that under 40 U.S.C. 276a(b), a Davis–Bacon Act contractor's or subcontractor's (1) irrevocable contributions to a trustee or third person pursuant to a fund, plan, or program to provide pensions on retirement or death, *or* (2) assumption of an enforceable commitment to bear the costs of such a plan or program communicated in writing to the workers affected, would act to bring the employer within ERISA's fiduciary provisions. *See Arakelian v. National Western Life Ins. Co.*, 680 F.Supp. 400, 402 (D.D.C.1987). But the parties also agree that the defendants in this case never contributed the wages they withheld to an ERISA plan and that they never assumed a commitment to bear the costs of such a plan themselves.

■ Rather, plaintiff's theory of his case presents this Court with a question of apparent first impression. That question is whether a federal court may properly impute an ERISA pension plan, and the responsibilities and potential broad liabilities that accompany such a plan, to an employer in the absence of any writing evidencing

---

1. In a pleading filed on March 27, 1992, the defendants also assert that, as a result of the Labor Department's investigation of Roland Parson Contracting Co. pursuant to the Davis–Bacon Act and Contract Work Hours and Safety Standards Act, the DOL has requested the Washington Metropolitan Area Transit Authority to withhold nearly $27,000 in funds from the prime contractors on the construction projects at issue in this case to cover back wages attributable to Parson.

establishment of a plan or of any benefits actually paid, and based solely on (1) the employer's oral representations to its workers that a plan was to be established, and (2) the employer's distribution to its workers of a pension fund's brochure summarizing a plan the employer intended to join.

The parties' pleadings and exhibits reveal the following pertinent facts. Parson Corp. was a subcontractor to Lott Constructors, Inc., for one of the parking projects and to Prism Construction Co. for the other. Together, the projects lasted from February 1990 through June 1991. Both subcontracts expressly required Parson Corp. to pay prevailing wages under the Davis–Bacon Act. The defendants were aware of their obligation to pay these wages, including payment of fringe benefits either directly or to an employee benefit plan, but they never made the benefit payments.

David Parson, the company's field manager, testified at deposition that the defendants intended to establish and pay into a pension plan, rather than making direct payments, as a way of reducing payroll taxes. He testified that, in hiring several workers for the Lott and Prism projects, and later in response to inquiries from workers, he told them that the company intended to contribute into a pension plan on the workers' behalf the difference between the posted prevailing wage rates and those wages actually being paid. He further testified that in July 1990, after work had increased on the Lott project and commenced on the Prism project, Parson Corp.'s workforce had grown such that he and Travis discussed generally implementation of the pension plan.

Travis Parson, the company's treasurer, testified at deposition that he was initially in contact with a pension plan know as Plan Data in 1987, that he had inquired then about joining, and that he had accumulated some 50 copies of a brochure describing Plan Data's pension plan by receiving "start-up" packages from Plan Data three or four times since 1987. He testified that he intended to begin contributions to the plan following commencement of work on the Lott subcontract in early 1990. Regarding the Plan Data brochures, David Parson testified that he first became aware of them in August 1990 and asked Travis to be sure they were distributed to the employees; Travis testified that he did distribute the brochures and that "[t]he purpose of disseminating the Summary Document was, to my understanding, to show the men what we planned to do with the money that was being withheld from their paychecks." [2]

Travis Parson testified that the only contributions he has ever actually made to Plan Data was about $900 in late-June 1991 on behalf of four employees working on a subsequent prevailing wage contract. Plaintiff supports this assertion, stating that it is "Plan Data's position, expressed in a letter to plaintiff's counsel, ... that Defendants never established or adopted the Plan Data pension plan. [Exh. 19, 10/28/91 letter ...]." Plaintiff's Statement of Facts, para. 18.

Based on these facts and admissions, plaintiff contends that the defendants never intended to contribute the wages they withheld to Plan Data or any other pension plan, but rather determined to deceive their employees and convert the wages to their own use. The plaintiff relies primarily on the Court of Appeals for the Eleventh Circuit's *en banc* decision in *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982), and a number of subsequent cases based on

---

**2.** As plaintiff points out, the plan summary brochure states in its first sentence that "Your employer has adopted a retirement plan for its employees" and later provides a section entitled "Statement of ERISA Rights." However, the brochure also states in its third and fourth sentences that "Contributions to the plan are made by the employer in addition to your regular pay. *They are not deducted from your wages*" (emphasis added). It also states later, in a section entitled "Employee Contributions," that "Contributions to the Plan by employees are *not* allowed" (emphasis in original). Plaintiff Exh. 7. Based on this language, it appears that Parson employees concerned about the disposition of prevailing wage mounts *withheld* from their checks, as plaintiff asserts he and others were, would not have been reasonably mislead by the information contained in the brochure.

*Dillingham,* to support his argument that "[e]mployers' oral statements concerning pension plan benefits suffice to create an employee benefit plan enforceable under and subject to regulation by ERISA." Plaintiff's Memo in Support of Summary Judgment at 9–10; Supplemental Memo at 2–4.

The Court has reviewed carefully the case law related to this question and finds *Dillingham* and other cases to be distinguishable from this case on several grounds. *Dillingham* itself did not deal with establishment of an ERISA pension plan as defined by 29 U.S.C. 1002(2)(A), but rather with whether benefits provided under a health insurance plan falling under Section 1002(1)(A)'s definition of "employee welfare benefit plan" fell within ERISA. Although ERISA contains no requirement of a formal, written plan for welfare benefit plans or pension plans in either its coverage section, 29 U.S.C. 1003(a), or its definition sections, 1002(1) and (2), Section 1002(2) defines a pension plan as "any plan, fund, or program" that is "established or maintained by an employer" that "by its *express terms* or as a result of *surrounding circumstances* . . . (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment and beyond" (emphasis added). Even under the looser definition of "employee welfare benefit plan," which does not require reference to "express terms" or "surrounding circumstances" as does Section 1002(2) on pension plans, the *Dillingham* Court held that

> an ultimate decision by an employer . . . to provide the type of benefits described in ERISA . . . is *not* the establishment of a plan or program. Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become a reality—e.g., . . . assuring employees that the plan or program exists—*but it is the reality of the plan . . . and not the decision to extend benefits that is determinative.*

688 F.2d at 1372–73 (emphasis added).

Likewise, the other cases cited by plaintiff, and a number of additional court of appeals decisions, deal for the most part with welfare benefit plans rather than pension plans, and all concern facts in which the provision of benefits is already a reality. *See, e.g. Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 758 (5th Cir.1990) (early retirement supplement to established ERISA retirement plan; no distinction to be made regarding employer misrepresentations); *Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546 (6th Cir.1989) (employer's promulgation of severance pay guidelines created an ERISA plan for such benefits, even though not published to employees); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503–04 (9th Cir.1985) (severance pay practice may constitute an ERISA plan); *Gilbert v. Burlington Indus.,* 765 F.2d 320, 324–25 (2d Cir.1985), *aff'd* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) (employee manual that referenced severance policy held an ERISA plan).

More in point are *Harris v. Arkansas Book Company,* 794 F.2d 358 (8th Cir. 1986), and *Hollingshead v. Burford Equipment Co.,* 747 F.Supp. 1421 (M.D.Ala.1990). In *Harris,* a long-term employee, fired without warning after 49 years of service, sued under ERISA for pension benefits claiming entitlement based on (1) alleged oral representations from supervisors that he would receive a pension, and (2) the employer's 25 years of monthly "gift" payments to another retiree. The Court of Appeals for the Eight Circuit affirmed the district court's rejection of the ERISA claim, relying on *Dillingham* and holding that "neither the payments . . . nor the promise of payments . . . establish such a plan." 794 F.2d at 360. In *Hollingshead,* a case with the same essential facts—*i.e.,* pensions paid to some and denied to others—and with an opposite result, the district court grounded its decision to impute an ERISA plan on its finding that "the definitive requirement is the reality of the provision of specified benefits, regardless of whether the plan is formal or informal, written or unwritten." 747 F.Supp. at 1428. As already indicated, it is clear in this case that no pension benefits were provided to Parson Corp. employees.

■ Plaintiff points to the defendants' distribution of the plan brochures to its workers as evidence of deliberate false representations warranting imputation of a plan. Again, however, under the case law the Court must find that ERISA does not provide a remedy for an employer's fraud or negligent misrepresentation in cases where no plan has been "established or maintained" as determined by "express terms" or "surrounding circumstances." Two recent court of appeals decisions address the issue of whether an employer's distribution of a summary plan description evidences establishment of a plan, *Wickham v. Northwestern Nat. Ins. Co.*, 908 F.2d 1077 (1st Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990) (life insurance plan), and *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1986) (medical insurance plan). Both cases indicate that an employer's distribution of "[s]uch a booklet, detailing ERISA rights, is strong evidence that the employer has adopted an ERISA regulated plan." *Wickham*, 908 F.2d at 1083; *see Kanne*, 867 F.2d at 491–93. Again, however, both cases dealt with situations in which the employers maintained established benefit plans and in no way required the courts, as here, to fashion an employee benefit plan out of whole cloth.

Finally, the Court acknowledges plaintiff's argument that, although defendants never adopted a plan, their withholding of fringe benefits based on the false representation that they were investing these funds places them within the scope of ERISA's fiduciary provisions. The Court finds that this argument is answered by plaintiff's own acknowledgment that "[n]ormally, plan participants do not have standing under ERISA to directly sue their employer for failing to contribute to an employee plan" and "are restricted to suing deriva-

tively, on behalf of the plan, and then only if the plan's trustees breach their fiduciary duties by not suing the employer." Plaintiff's Memo at 10. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141–143, 105 S.Ct. 3085, 3089–3091, 87 L.Ed.2d 96 (1985). While here there is no plan on behalf of which the plaintiff might sue, the Court rejects plaintiff's contention that "ERISA's remedial purposes can be achieved only by allowing the employees to sue their employer for relief that ordinarily is available only to the plan, plan administrator or trustee." Plaintiff's Memo at 10. On the contrary, in addition to actions in tort and contract available to plaintiff in state court, the Davis–Bacon Act provides a process for recourse and restitution through the Department of Labor, including referral to the United States Attorney for prosecution in appropriate cases. *See* 40 U.S.C. 276a *et seq.* and 29 C.F.R. Part 5 (1991).[3]

The Court is not unmindful of the strong equities presented by the plaintiff's case. Notwithstanding the clear suggestion of intentional or negligent wrongdoing by the plaintiffs, however, the Court finds no legal basis for extending even the elastic fiduciary provisions of ERISA to the bounds indicated here. Accordingly, the Court finds as a matter of law that the defendants did not establish a employee benefit plan subject to ERISA, and that the plaintiff therefore fails to state a federal cause of action upon which relief can be granted. In the absence of a federal question, the Court lacks subject matter jurisdiction to consider plaintiff's claims and dismisses this suit on that account.[4]

---

**3.** No private right of action exists under the Davis Bacon Act. *See Weber v. Heat Control Co.*, 579 F.Supp. 346 (D.N.J.1982), *aff'd* 728 F.2d 599 (3d Cir.1984).

**4.** The Court also notes that both plaintiff John Kenney and defendant Travis Parson are Mary-

land residents and therefore that complete diversity of citizenship would also be lacking in this suit under 28 U.S.C. 1332(a)(1). *See* Complaint.