John J. KENNEY, Jr., Appellant,

v.

ROLAND PARSON CONTRACTING CORPORATION, et al., Appellees.

No. 92–7079.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 5, 1993.

Decided July 15, 1994.

Stephen M. Koslow, Washington, DC, argued the cause and filed the brief for appellant.

Before MIKVA, Chief Judge, WALD, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

John Kenney brought this suit against his former employer, Roland Parson Contracting Corporation, for breach of fiduciary obligation under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.* Kenney alleged—and Parson admitted—that Parson deducted money from his paycheck for the purpose of funding a pension plan and then failed to contribute that money to an actual pension fund. Finding the allegations of the complaint insufficient to conclude that Parson had ever established a "pension plan" subject to ERISA, the district court dismissed the suit pursuant to Fed.Rules Civ.Proc. Rule 12(b)(6) for failure to state a federal cause of action. We hold that Parson had established an ERISA plan and accordingly we remand the case to the district court for further proceedings.

## I. BACKGROUND

The relevant facts were not disputed before the district court. Between July 1990 and January 1991 John Kenney worked for Parson Contracting, a small masonry contractor, as a bricklayer on two construction projects for the Metrorail system. Both contracts were subject to the Davis–Bacon Act, 40 U.S.C. § 276a, which requires each contractor on a federally-assisted project to pay its workers at least the prevailing wage, as determined by the Secretary of Labor, in the area in which the work is performed. For purposes of the Act, the wage paid may be comprised in part of fringe benefits, which may take the form either of direct payments to the employee or of contributions to an employee benefit plan.

Parson informed its employees that it intended to satisfy its Davis–Bacon Act obligation by paying the difference between their wage and the prevailing wage into a pension fund for their benefit. Parson also contacted Plan Data, the administrator of a pension plan for construction workers, about participating in its plan, and obtained a number of brochures that described the pension plan offered by Plan Data.

In response to questions from some employees regarding whether they were receiving all the wages to which they were entitled, Parson distributed copies of the Plan Data brochure to its employees. ("The purpose of disseminating the summary document was ... to show the men what we planned to do with the money that was being withheld from their paychecks.") The brochure stated that a participating employer (which Parson specifically told Kenney and other employees it was) would make contributions to the plan on behalf of its employees and that, if certain criteria were met, each employee could expect to begin receiving benefits either upon his retirement, death, or disability, or upon the termination of his employment. The brochure also described, in general terms, how an employee could file a claim for benefits under the plan. Finally, the brochure described, again in general terms, the tax consequences of the plan and the protections and rights to which each plan participant was entitled under ERISA. The brochure also advised the employee that for more detailed information he could ask for a copy of the complete plan agreement.

Insofar as is relevant to this case, Parson never actually paid any money into the Plan Data or any other pension fund. Because it deducted money from the employees' wages for that purpose, it paid its employees less than the prevailing wage, in violation of the Davis–Bacon Act. The Department of Labor investigated, with the result that Parson is now making restitution to its employees. Apparently dissatisfied with that remedy, Kenney filed suit in district court alleging a breach of the fiduciary duty assertedly imposed upon Parson by ERISA. Kenney also made various state law claims sounding in fraud, breach of contract, promissory estoppel, and tortious conversion. Pursuant to those claims, he sought compensatory and punitive damages, attorneys' fees, court costs, and fines. Finally, Kenney sought certification as the representative of a class of more than 100 employees that he alleged suffered the same type of harm.

The district court denied Kenney's motion to certify a class and dismissed his lawsuit. Finding that Kenney had not alleged facts

demonstrating that Parson had "establish[ed] a[n] employee benefit plan subject to ERISA," the district court ruled that he had failed to state a claim under that Act, and dismissed without prejudice Kenney's pendent state law claims. *Kenney v. Roland Parson Contracting Corp.*, 790 F.Supp. 12, 16 (D.D.C.1992).

## II. ANALYSIS

On appeal Kenney's central argument is that Parson's course of dealing with and representations to its employees established a putative pension plan of which Parson is the fiduciary. A "pension plan" or an "employee pension benefit plan" is defined in ERISA as "any plan, fund, or program which ... is ... established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A).

█ Because this is a purely functional definition, the range of factors that may be considered in determining whether the employer established a plan is necessarily broader than those that would be used to determine whether a contract had been created at common law. *See, e.g., Modzelewski v. Resolution Trust Corp.*, 14 F.3d 1374, 1377 (9th Cir.1994) ("Because ERISA's definition of a pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan, whether or not the parties intended to do so"). Still, if the appellant is to succeed, he must show that: (1) there is a plan, fund, or program; (2) "established and maintained by an employer"; (3) with one of the two effects set out in the statute, as quoted above.

█ In other words, the broad statutory definition of a pension plan does not avail the appellant unless he can demonstrate that his employer established or maintained some sort of pension plan. As the statute itself makes clear, however, the plan need not be formalized; the plaintiff can prevail if the existence of a plan can be inferred from the "surrounding circumstances." 29 U.S.C. § 1002(2)(A); *see also, e.g., Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982) (en banc) (holding that although ERISA requires administrator to maintain written instrument establishing plan, such instrument is "not [a] prerequisite[ ] to coverage under the Act").

█ The *Dillingham* court was one of the first to consider the type of "surrounding circumstances" from which one may (or may not) infer that there is an ERISA plan notwithstanding the lack of a formal instrument to that effect. To begin with what it makes clearest, "[a] decision to extend benefits," standing alone, "is not the establishment of a plan or program." *Id.* at 1373. More is required, to wit:

> [A] court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. Some essentials of a plan, fund, or program can be adopted, explicitly or implicitly, from sources outside the plan, fund, or program ... but no single act in itself necessarily constitutes the establishment of the plan, fund, or program.

*Id.* Thus, even written evidence of the employer's intent to provide pension benefits, while important, does not establish "that the decision has become a reality.... [I]t is the reality of a plan, fund or program and not the decision to extend benefits that is determinative." *Id.*

Every circuit that has since been required to decide whether, on the particular facts before it, a pension plan has come into being has adopted the *Dillingham* approach. *See Wickman v. Northwestern National Ins. Co.*, 908 F.2d 1077, 1082–83 (1st Cir.1990); *Deibler v. United Food & Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3d Cir. 1992); *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 861–862 (4th Cir.1994) (en banc); *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240–41 (5th Cir.1990); *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 551 (6th Cir.1989); *Ed Miniat, Inc. v.*

*Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738–39 (7th Cir.1986); *Harris v. Arkansas Book Co.*, 794 F.2d 358, 360 (8th Cir.1986); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503–04 (9th Cir.1985); *Peckham v. Gem State Mutual of Utah*, 964 F.2d 1043, 1047–48 (10th Cir.1992). We would want a good reason, therefore, to strike out in a direction different from the well-trod path before us.

■ Anticipating the judicial distaste for novelty, Kenney presented evidence intended to demonstrate that the *Dillingham* requirements have been met. First, Parson regularly told its employees that it was making contributions to a pension plan on their behalf. Second, when its employees expressed scepticism about whether Parson was in fact providing them with pension benefits, Parson distributed the Plan Data brochure. From that brochure, "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Dillingham*, 688 F.2d at 1373. Such particularity in Parson's representations was intended to and presumably did induce its employees to believe that they could rely upon their employer for a degree of retirement income security.

The district court held that Parson's distribution of the brochure does not help the plaintiff's case because "ERISA does not provide a remedy for an employer's fraud or negligent misrepresentation in cases where no plan has been 'established or maintained' as determined by 'express terms' or 'surrounding circumstances.'" 790 F.Supp. at 16. The court then went on to distinguish two cases holding that the distribution of a similar booklet provided "strong evidence that the employer has adopted an ERISA regulated plan." *Id.* (quoting *Wickham v. Northwestern National Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir.1990) and citing *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988)). According to the district court, "both cases dealt with situations in which the employers maintained established benefit plans and in no way required the courts, as here, to fashion an employee benefit plan out of whole cloth." *Id.*

With respect, the court's distinction strikes us as circular: the brochure is not evidence that a plan existed because, in fact, no plan actually existed. Properly viewed, we think distribution of the plan summary is one of the "surrounding circumstances" from which a court—like the employees—could reasonably infer that Parson established or maintained a plan subject to ERISA.

Instead of discounting the evidentiary value of the plan summary, the district court should have inquired whether its distribution, in combination with other surrounding circumstances, satisfies the *Dillingham* standard. As the Third Circuit recently described the appropriate inquiry:

> [1] internal or distributed documents, [2] oral representations, [3] existence of a fund or account to pay benefits, [4] actual payment of benefits, [5] a deliberate failure to correct known perceptions of a plan's existence, [6] the reasonable understanding of employees, and [7] the intentions of the putative sponsor would all be relevant to determine whether a plan existed.

*Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391, 400 (3d Cir.1992).

By our reckoning, in this case at least five of the seven factors—all but numbers [3] and [4]—weigh in favor of the employer having established an ERISA plan. There was arguably also [3] a fund in the picture, created by Parson's withholding of employee wages. To be sure, there was no "actual payment of benefits," but that is not very significant in view of the short period of time involved and the apparent lack of any claim for benefits having been made. Indeed, upon presentation of a claim, Parson might well have paid the benefits due, a la Ponzi, rather than be exposed. In short, virtually every indicator points toward there being a plan.

■ We must be mindful also of the Congress's intention to protect employees from the possibility of abuse inherent in the operation of an employee pension or other benefit plan, *see* 29 U.S.C. § 1001(a). In view of the purpose of the statute, it seems to us that an employer's representation that a plan has been established, in conjunction with any action, such as withholding wages for contribution to such a plan, that tends to confirm its

representations, will ordinarily outweigh the employer's failure formally to establish a plan. Certainly when the elements underlying the *Dillingham* test are as one-sided as they are in this case, a court should find that a plan has been established in order to effectuate the "broadly protective purposes" of ERISA. *John Hancock Mutual Life Ins. Co. v. Harris Trust & Savings Bank,* — U.S. —, —, 114 S.Ct. 517, 524, 126 L.Ed.2d 524 (1993). Therefore, in view of the surrounding circumstances considered above, we hold that there was, as a matter of law, an ERISA plan for Parson's employees.

■ The appellant has no difficulty making the other showings necessary to subject Parson's plan to the requirements of ERISA. Having determined that there was an ERISA plan in this case, we think it obvious that the plan in question was "established and maintained by [the] employer" for its employees. *Cf. Peckham,* 964 F.2d at 1049 ("The 'established or maintained' requirement seeks to ascertain whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the establishment or maintenance of the plan"). Second, the plan has the effects required by the Act: it (at least purportedly) provides retirement income to the employees and it results in their deferring income to or beyond the termination of their employment with Parson. *See* 29 U.S.C. § 1002(2)(A) (quoted above). Hence, we conclude that Parson established an ERISA-regulated plan. It is therefore open to Kenney on remand to establish that Parson was acting as the plan's fiduciary and that it breached the fiduciary obligation imposed upon it by ERISA.

### III. CONCLUSION

The plaintiff alleged sufficient facts to state a claim under § 1002(2)(A) of ERISA, and that claim should therefore be reinstated. In addition, because the district court dismissed Kenney's state law claims only because it had dismissed the federal claim upon which federal jurisdiction depended, *see* 28 U.S.C. § 1367(c)(3), his state law claims

should also be reinstated. Accordingly, the judgment of the district court is

*Reversed.*