**In re Kenneth BATTRAM, Debtor.**

**Carol LEONARD, an individual, Plaintiff,**

v.

**SUNNYGLEN CORPORATION, a California corporation; Kenneth I. Battram, an individual; Nancy Lyle, an individual; Douglas K. Futura, an individual; Dexter W. Godbey, an individual; Sunnyglen Corporation Disability Agreement, an employee welfare benefit plan, Defendants.**

Bankruptcy No. SA 96–15604 JW.
Adversary No. SA 96–1655 JW.

United States Bankruptcy Court,
C.D. California.

Nov. 14, 1997.

Alan V. Thaler, Harley L. Bjelland, Law Office of Alan V. Thaler, Costa Mesa, CA, for Plaintiff.

John J. Bingham, Jr., George E. Schulman, Kevin L. Hing, Danning, Gill, Diamond & Kollitz, L.L.P., Los Angeles, CA, for Kenneth Battram.

Stephen M. Garcia, Law Offices of Stephen M. Garcia, Manhattan Beach, CA, for Deter W. Godbey and Nancy Lyle.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

### INTRODUCTION

This matter involves an ERISA employee benefit plan entered into between several of the captioned parties. The issue before the Court is whether that plan is a specific type of ERISA plan known as a "Top–Hat" plan, which under the ERISA statute exempts the employer from any fiduciary duty to the employee. If the plan is *not* a top-hat plan (which would mean that ERISA *does* impose fiduciary duties), then the Court must consider whether the employer breached any fiduciary duty to the employee.

Kenneth Battram ("Debtor"), as President and controlling shareholder of Sunnyglen Corporation ("Sunnyglen"), entered into an

agreement (the "Plan") with a long-time employee, Richard Leonard ("Leonard") and Leonard's wife Carol ("Plaintiff"). The purpose of the Plan was to provide monthly benefit payments to Leonard and Plaintiff. The Plan provided that Sunnyglen would secure the obligation to make such payments by recording a deed of trust against certain improved real property known as the Playa Pacifica Apartments located in Hermosa Beach, California. This apartment complex was not owned by Sunnyglen, but by Playa Pacifica Limited, a partnership entity of which Debtor has a 95% general partnership interest. In 1995, Sunnyglen discontinued the monthly payments before the full amount due under the terms of the Plan had been paid. Playa Pacifica Limited filed Chapter 11 on February 22, 1996, Debtor filed Chapter 11 on May 15, 1996, and Sunnyglen filed Chapter 11 on June 12, 1996. It was later discovered that Debtor had not recorded a deed of trust on the Playa Pacifica Apartment project.

On May 24, 1996, Plaintiff filed an action in Federal District Court against Debtor and others for failure to make Plan payments. That action was removed to this Court on June 14, 1996, as Adversary Proceeding SA 96–1655 JW. Plaintiff also filed a non-dischargeability Complaint against Debtor on August 16, 1996, as Adversary Proceeding SA 96–1854. Several motions and cross-motions for summary judgment were filed in both adversaries. A hearing on these motions was held on June 12, 1997, and continued to July 14, 1997, for further briefing. On July 14, 1997, the Court made certain findings, required further briefings, and took the matter under submission on August 4, 1997.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges of the Central District of California) This is a core proceeding under 28 U.S.C. § 157.

## FACTS

Plaintiff is the widow of Leonard, who was an executive of Sunnyglen. In January of 1989, Leonard was diagnosed with Alzheimer's disease. His employment with Sunnyglen was terminated as of March 1, 1989. Prior to leaving Sunnyglen, Leonard had been a participant in a profit sharing plan. Leonard was terminated from that plan after having received in excess of his entitlement under the terms of the profit sharing plan. In November of 1990, Leonard, Plaintiff and Debtor entered into an agreement entitled "Disability Agreement and General and Special Release," under which Sunnyglen and Debtor agreed to pay Leonard and Plaintiff the sum of $496,837.06 plus 10% simple interest in monthly payments of $10,000.00. The stated purpose of the Plan was that:

> Sunnyglen, in recognition of Leonard's long-term employment, valuable past services, and unfortunate disabilities that now preclude Leonard from rendering effective work performance, desires to provide Leonard with a fair and adequate amount of disability income for a reasonable period of time following his termination ...

The Plan also includes a mutual release from any possible cause of action between Debtor and Sunnyglen, and Leonard and Plaintiff. Soon after entering into the Plan, Leonard died, and Plaintiff alone continued to receive the payments.

By January of 1995, Sunnyglen had made approximately $300,000.00 in payments to Leonard and Plaintiff pursuant to the agreement. At that point the payments ceased. On February 22, 1996, Playa Pacifica Limited filed Chapter 11, on May 15, 1996, Debtor filed chapter 11, and on June 12, 1996, Sunnyglen filed Chapter 11. On May 24, 1996, Plaintiff filed a Complaint in Federal District Court against Debtor, Sunnyglen, Nancy Lyle ("Lyle"), Douglas K. Furuta ("Furuta"), and Dexter W. Godbey ("Godbey") for Recovery of Benefits, Injunctive Relief, Breach of Fiduciary Duty, Attorney's Fees, Costs and Interest, Breach of Contract and Action on Promissory Note in the action titled *Carol*

*Leonard v. Sunnyglen, Kenneth I. Battram, et al.,* Case No. SA CV 96–498 AHS. That case was removed to this Court as Adversary Proceeding No. 96–1655 JW on June 14, 1996. On August 15, 1996, Plaintiff filed a Complaint for a determination of non-dischargeability of debt, thereby initiating Adversary Proceeding No. 96–1854 JW. On May 5, 1997, Debtor filed Motions for Summary Judgment in each of the two adversary proceedings, and on May 21, 1997, Plaintiff filed Cross–Motions for Summary Judgment in each adversary case. Also on May 21, 1997, defendants Godbey and Lyle filed their Motion for Summary Judgment in Adversary Proceeding SA 96–1655. After the last hearing on those motions held on July 14, 1997, the Court found that the agreement between Leonard and Debtor is an Employee Welfare Benefit Plan under ERISA, that Leonard was a participant in the Plan, and that the Plan was not funded. Aside from those findings, the matter was taken under submission.

At issue before the Court now is whether the Plan is a "Top–Hat" plan, which under ERISA would exempt Debtor from having a fiduciary duty to Leonard or Plaintiff. In the event the Plan does not constitute a top-hat plan, then the question becomes whether Debtor breached any fiduciary duty to Leonard and Plaintiff and, if so, what damages Plaintiff is entitled to.

## DISCUSSION

■ The Court previously found that the agreement between Debtor, Leonard and Plaintiff is an Employee Welfare Benefit Plan under ERISA, the elements of which are that (1) a plan, fund or program exists, (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, or disability (5) to participants or their beneficiaries. *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982). A "Top–Hat" plan is defined in ERISA as "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1).

■ By way of explanation, the Court will now revisit its finding that the plan was not funded. It is clear that the parties intended the Plan to be funded by virtue of language in the agreement providing that the obligation was to have been secured by a deed of trust on the Playa Pacifica Apartments. However, as explained below, 29 U.S.C. § 1101(a)(1) does not address intent of the parties; only whether the plan is funded or not. Therefore, it is irrelevant to the discussion of whether this Plan is a top-hat plan that the parties intended for the Plan to be funded.

■ Whether the plan is a top-hat plan is a key issue because ERISA exempts top-hat plans from the fiduciary, funding, participation and vesting requirements applicable to other employee benefit plans. *Duggan v. Hobbs,* 99 F.3d 307, 310 (9th Cir.1996); *see also* 29 U.S.C. § 1101(a)(1). Since this Court has ruled that the plan in question was not funded, the remaining inquiries are whether the plan was maintained primarily for the purpose of providing deferred compensation, and whether Leonard was a member of a select group of management or highly compensated employees.

## I. Was the plan maintained primarily for the purpose of providing "deferred compensation"?

■ The Ninth Circuit has adopted an expansive interpretation of what constitutes "deferred compensation." *Duggan v. Hobbs,* 99 F.3d 307 (9th Cir.1996). With respect to a top-hat plan, "deferred compensation" can include the right to income derived from a severance agreement rather than from past earnings that have been retained by the employer for repayment to the employee at a later date. *Duggan,* 99 F.3d at 310. Top-hat plans differ from pension plans in that "their purpose need not be to provide pension benefits and they do not necessarily result in a deferral of income for periods extending to the termination of covered employment or beyond as would pension benefit plans." *Carr v. First Nationwide Bank,* 816 F.Supp. 1476, 1488 (N.D.Cal.1993). The policy rationale for the top-hat exception is that "in providing relief for 'top hat'" plans

from the broad remedial provisions of ERISA, Congress recognized that certain individuals, by virtue of their positions or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan, taking into consideration any risks attendant thereto, and therefore, would not need the substantive rights and protection of Title I". *Duggan*, 99 F.3d at 310 (citing DOL Opin. Letter 90–14A; *see also* DOL Opin. Letter 92–13A, n. 1).

This Court looks to the Ninth Circuit decision in *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir.1996), for guidance as to the makeup of a top-hat plan, and finds that decision binding as applied to the facts of this case. In its decision, the *Duggan* Court did not rely on any one particular factor in determining that an ERISA plan was a top-hat plan. 99 F.3d at 309–312. Rather, the Court looked to (1) the employee's status within the company that allowed him to influence the design of the plan, (2) the fact that the severance payments were made "in consideration for (the employee's) years of dedicated service [and] loyalty to the company," (3) the fact that the employee waived any claims he might have had to residual commissions, (4) that the employee could have sought a lump sum payment in exchange for his waiver of all claims and his retirement but elected instead to accept deferred payments over an extended period of time, (5) that the employer drew money from its general account to pay the employee's benefits—not from any specially created or maintained account, and (6) that the employee was terminated shortly after the execution of his severance agreement. *Id.*

The facts of this case are very similar to those of *Duggan*. The Plan was made partly in recognition of Leonard's "long-term employment" and "valuable past services," and the Plan included Leonard and Plaintiff's release of any possible cause of action against Debtor or Sunnyglen. As in *Duggan*, Sunnyglen paid Leonard from its general account and not from any special fund; Leonard had ceased working for Sunnyglen long before the execution of the Plan, and the

payments contemplated by the Plan were made in consideration of dedicated service and loyalty. *See Id.* at 311. To the extent the Plan payments in this case were a gratuity, a top-hat plan need only be "primarily" for the purpose of providing deferred compensation, not exclusively for that purpose. *Id.* at 311; *see also* 1101(a)(1). Simply labeling the payment within the Plan as "disability income" does not dissuade the Court from finding that the Plan provided for deferred compensation payments under the Ninth Circuit's expanded definition in *Duggan. See Id.* at 310–312.

## II. Was Leonard was a member of a select group of management or highly compensated employees?

Having found that the Plan was not funded and that the Plan provided for deferred compensation payments, the last consideration is whether Leonard was a member of a select group of management or highly compensated employees. Similar to its analysis on what constitutes deferred compensation, the *Duggan* Court approached this issue by considering a number of factors: (1) whether the number of employees covered by such a Plan is limited to a small percentage of the employer's entire work force, and (2) whether by virtue of their position or compensation those employees have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan. *Id.* at 312–313 (citing DOL Opin Letter 90–14A). In this case, Leonard was the only employee out of 32 employees to be party to such an agreement. Additionally, Leonard was a former executive of Sunnyglen. Even though Leonard was stricken with Alzheimer's disease and the Plan was executed after Leonard had left the company, Leonard's former status in the company and the fact that Debtor executed the Plan in part to obtain Leonard's release is sufficient to establish that Leonard exerted influence over the design and operation of the Plan.

Although the Court in *Duggan* did not address any distinction between explicit and implicit influence, the facts of this case show that Leonard, by virtue of his status within

the company, had some effect on the design and operation of the Plan. Therefore, Leonard was a member of a select group of management and a highly compensated employee.

Having determined that the Plan was maintained primarily for the purpose of providing deferred compensation and that Leonard was a member of a select group of management or highly compensated employees, the Court finds that the Plan is a top-hat plan, and Debtor did not have a fiduciary duty to Plaintiff.

## III. CONCLUSION

Having previously found that the plan in question is unfunded, and having now determined that it is a top-hat plan, the Court finds that no fiduciary duty is imposed upon Debtor with respect to Plaintiff. Since Adversary Proceeding SA 96–1655 JW is based on Debtor's alleged breach of fiduciary duty, and since Adversary Proceeding SA 96–1655 JW is similarly brought under 11 U.S.C. § 523(a)(4) for breach of fiduciary duty, the Court finds that there is no triable issue of fact; accordingly, Debtor's Motions for Summary Judgment in both adversaries are granted, Plaintiff's Cross–Motions for Summary Judgment in both adversaries are denied, and defendants Lyle and Godbey's Motion for Summary Judgment in Adversary Proceeding SA 96–1655 JW is granted. This Memorandum contains this Court's findings of fact and conclusions of law. Counsel for the Debtor will prepare an order consistent with these findings, lodge it with the court and serve it on counsel for the Plaintiff.