Kenneth **McLELLAN**, Joseph Chargois, James Glinsky, Salvador Mitrani, Jerry Ford, Lura Luquette, Eleanor J. Puckett, Individually and as Independent Executrix of the Estate of Leonard Puckett, Lloyd Barnett, Warren Daigle, Frank Wertz, Lynn Asher, as Independent Executrix of the Estate of Olive Weiner, and Sheldon Rosenthal, Appellants,

v.

Gerald P. **KLEIN**, Martha Klein, Roger N. Ennis, Ennis Financial Services, Inc., Sigmund Greenberg, and Leah Greenberg, Appellees.

No. 09–93–167 CV.

Court of Appeals of Texas, Beaumont.

Jan. 6, 1994.

---

7. There is no evidence to support the jury's find-ing that Johnson acted maliciously.

Walter D. Snider, Strong, Pipkin, Nelson & Bissell, Beaumont, for appellants.

Gina Fantasia, Hirch, Glover, Robinson & Sheiness, Houston, Lance Fox, Orgain, Bell & Tucker, Dewey J. Gonsoulin, Mehaffy & Weber, Bruce M. Partain, Wells, Peyton, Beard, Greenberg, Hunt and Crawford, Beaumont, for appellees.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

This suit was brought by management level employees of the now defunct The Fair,

Inc., who were participants in a supplemental income plan. They had tried to recover their benefits in The Fair's bankruptcy proceeding, but the bankruptcy court ruled that they did not have a secured interest in the plan, nor an ownership interest in the policies insuring the participants' lives, and as a result they recovered only a small fraction of their bankruptcy claim. Then Kenneth McLellan, Joseph O. Chargois, James Glinsky, Salvador Mitrani, Jerry Ford, Lura Luquette, Eleanor J. Puckett, Individually and as Independent Executrix of the Estate of Leonard Puckett, Warren Daigle, Frank Wertz, Lynn Asher, as Independent Executrix of the Estate of Olive Weiner, and Sheldon Rosenthal initiated this action in state court. They sued the officers and directors of The Fair, Inc., Gerald P. Klein, Sigmund Greenberg, Leah Greenberg, and Martha Klein, for negligence and gross negligence, and sued Roger N. Ennis and Ennis Financial Services, Inc. (the agent who recommended the plan and sold the Fair insurance policies on the lives of the key employees) for negligence and gross negligence, plus violations of the Deceptive Trade Practices Act and the Insurance Code. The trial court ruled that the plan was covered by ERISA[1] and granted summary judgment for all of the defendants as to all parties and claims. Appellants raise four points of error.

The first three points of error challenge the trial court's ruling that appellants' state law claims were pre-empted by ERISA, to wit:

Point of error one: The trial court erred in granting summary judgment in favor of the Appellees and against the Appellants based on ERISA preemption because a fact issue existed as to whether the Supplemental Income Agreements were ERISA plans.

Point of error two: The trial court erred in granting summary judgment in favor of the Appellees and against the Appellants based on ERISA preemption because the Supplemental Income Agreements were not ERISA plans.

Point of error three: The trial court erred in granting summary judgment in favor of the Appellees and against the Appellants because the Supplemental Income Agreements were "unfunded excess benefit plans" and, therefore, not subject to ERISA preemption.

Each employee executed an agreement with The Fair which was identical to the others but for the amount of compensation. The agreements provided for retirement income benefits in the event the employee was still employed with The Fair at age 65. It further provided for death benefits should employment be terminated by the employee's death prior to retirement. The benefits would continue only so long as the retired employee did not compete with The Fair.

Appellants thought they were enrolling in an insured deferred compensation plan and believed they would own the insurance, when in fact The Fair was the sole owner and beneficiary. The insurance policies were not directly tied to the agreements, which were funded out of the general assets of the corporation. Appellants argue the agreements were employment contracts designed to fall outside ERISA, not retirement plans.

Appellants contend that whether a plan is in fact an ERISA plan is not a question of law, but a question of fact to be answered in light of the surrounding circumstances. *Burghart v. Connecticut Gen. Life Ins. Co.,* 806 S.W.2d 324, 327 (Tex.App.—Texarkana 1991, no writ). In *Burghart* the employee purchased a long-term disability insurance policy from the insurance company through her employer, but no contributions were made by the employer and the only involvement of her employer was to collect premiums through payroll deductions. The Texarkana Court of Appeals held a fact issue existed as to the existence of a plan within the meaning of ERISA. In this case, The Fair

---

1. Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001, et seq. (1985 and Supp.1993).

did not act as a mere conduit for an insurance company, but the "plan," such as it was, was constructed and administered by The Fair itself. *Burghart* is distinguishable from the case before us. In this case, it is not the existence of an agreement which is at issue, but the applicability of ERISA to that agreement. This issue is one of law, not fact.

■ The federal courts have devised a test for determining whether an ERISA plan exists. An ERISA plan exists if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of funding, and the procedures for receiving benefits. *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990); *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982). The agreements were identical except for the amounts involved and the names of the participants. They provided for deferred income payments and death benefits. The beneficiaries were the participants and their spouse or descendants, and all the participants were management level employees of The Fair. The contributions were added to the general corporate assets and the benefits were payable from the general assets of The Fair. Benefits were payable monthly commencing one month after retirement or death.

■ Appellants argue that ERISA does not apply because the plans no longer exist, having been terminated in the course of The Fair's bankruptcy proceedings. We must reject this argument because the bankruptcy affected only their ability to recover on their claims. The bankruptcy did not affect the existence or non-existence of a plan for ERISA purposes. It is undisputed that there was an agreement. It is the application of ERISA to that agreement which is at issue.

■ Appellants next refer to a letter written by the drafting attorney, in which he states: "[t]he policy itself would be in no way tied to the particular contractual obligation to an employee" and "it is important that benefits be provided for a select group of management or highly compensated employees, so that the program will be exempt from the rules of ERISA." Appellants argue that the plans are not "insured employee benefit plans" because the agreements were carefully constructed so as not to tie the insurance policies into the agreements. The intent of the drafters does not determine the applicability of the federal scheme, for if the plan actually implemented is not excluded by the statute, ERISA applies regardless of the employer's intentions. *See Donovan*, 688 F.2d at 1372. The plan was unfunded, that is, it was paid out of the general assets of the corporation and not through the insurance policies. The corporation intended to use the policies as the funding vehicle but it was not contractually required to do so.

Likewise, we must reject appellants' contention that ERISA does not apply because benefits were payable out of the general assets of the corporation rather than through the insurance policies. General corporate assets have been held sufficient to satisfy the "source of financing" prong of the ERISA plan analysis. *Williams v. Wright*, 927 F.2d 1540, 1544 (11th Cir.1991).

Appellants contend the agreements were not established pursuant to ERISA, instead comprising an "excess benefits plan" specifically excluded from ERISA. Appellees argue that excess benefit plans are excepted from parts 2, 3, and 4 of the ERISA regulatory provisions but that the preemption statute still operates. 29 U.S.C.A. § 1003(b)(5) provides: "The provisions of this subchapter shall not apply to any employee benefit plan if— ... (5) such plan is an excess benefit plan (as defined in section 1002(36) of this title) and is unfunded." Section 1002(36) provides:

(36) The term "excess benefit plan" means a plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by section 415 of Title 26 [the Internal Revenue Code] on plans to which that

section applies, without regard to whether the plan is funded.

26 U.S.C.A. § 415 (West Supp.1993) describes limitations on benefits and contribution under qualified plans for federal taxation purposes. Title 29 (Labor) Chapter 18 (Employee Retirement Income Security Program) Subchapter I (Protection of Employee Benefit Rights) includes both section 1003 (Coverage) and section 1144(a) (Other Laws–Supersedure; effective date). The Parts referred to by appellees are three of the five subdivisions of Subtitle B (Regulatory Provisions) to Subchapter I. Parts 2, 3, and 4 each contain a section defining the scope of that part. Section 1003 is in Subtitle A (General Provisions) and section 1144(a) is in Subtitle B, Part 5 (Administration and Enforcement) but the preemption provision is in the same *subchapter* as the exception-to-coverage provision. It would seem appellants have the better argument that the sections are co-extensive so that if applicable, the exception precludes state law preemption. This conclusion is supported by our examination of the legislative history of the statute. According to the historical note to section 1003, the word "subchapter" in that section was originally "Title" and referred to Title I of Pub.L. 93–406. That title is equivalent to Subchapter I to Chapter 18. The joint explanatory statement of the committee of conference stated:

> Under the substitute, the provisions of title I are to supersede all State laws that relate to any employee benefit plan that is established by an employer engaged in or affecting interstate commerce.... (However, following title I generally, preemption will not apply to government plans, church plans not electing under vesting, etc., provisions, workmen's compensation plans, non-U.S. plans primarily for nonresident aliens, and so-called "excess benefit plans.")

H.R.CONF.REP. No. 93–1280, 93rd Cong., 2nd Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 5038, 5162.

The sections cited by the appellees do exhibit that there is a type of plan which is covered by ERISA in general but exempt from the administration and enforcement provisions. These are unfunded plans maintained primarily for the purpose of providing deferred compensation for a select group of highly compensated employees. *See*, 29 U.S.C.A. §§ 1051(2), 1081(a)(3), 1101(a)(1).[2] We must determine whether the agreements in question constitute an "excess benefit plan" not governed by ERISA, as described in sections 1003(a) and 1002(36), or a "deferred compensation" plan described in sections 1051(2), 1081(a)(3), and 1101(a)(1). None of the cases cited in the brief discuss the distinction between the two groups of sections. We turn to I.R.C. § 415, which describes limits on pension plans qualified for special tax treatment under Title 26 (Internal Revenue Code) Subtitle A (Income Taxes) Chapter 1 (Normal Taxes and Surtaxes) Subchapter D (Deferred compensation, etc.) Part I (Pension, Profit-sharing, Stock Bonus Plans, Etc.) Subpart A (General Rule). The agreements do not comprise a qualified pension plan. Nothing in the record suggests that they were that part of a qualified pension plan that was in excess of the Section 415 limits. In fact, the drafting attorney's letter indicates that the plan was designed solely to provide deferred income to The Fair's executives. Therefore, we must agree with the conclusion reached by the appellees rather than that championed by appellants.

We conclude that the agreements were not part of a pension plan maintained solely for the purposes of providing benefits for certain employees in excess of the limits on contributions set by I.R.C. § 415, thus the plan was not an unfunded excess benefit plan. On the other hand, the agreements did comprise an unfunded plan maintained primarily for the purpose of providing deferred compensation for select management personnel and as a result were pension plans for ERISA purposes. Appellants' state law claims are

---

**2.** Parenthetically, we note that the first two of these sections exclude "excess benefit plans" without reference to funding; so, in any event, the ERISA reporting and vesting requirements would not have applied to the plan.

preempted by ERISA. Points of error one through three are overruled.

Point of error four avers: "The trial court erred in granting summary judgment in favor of the Ennis Appellees because regardless of the Supplemental Income Plan status, or lack thereof, under ERISA, the Appellants' causes of action against the Ennis Appellees do not relate to the Agreements." Appellants argue that since the insurance policies were not tied to the agreements, they do not "relate to" an ERISA plan and thus escape federal preemption of state law.

In examining appellants' pleadings, we find that the tortious acts allegedly committed by the Ennis appellees were made in connection with the agreements. In particular, we notice that: "Plaintiffs' damages consist of the benefits each was to receive pursuant to their employment agreements plus their contributions pursuant to the agreement less payments received by each from The Fair or the bankruptcy estate." Furthermore, appellants have not shown the Court where they raised this ground in writing before the trial court as required by TEX.R.CIV.P. 166(c). *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979). Point of error four is overruled. The judgment is affirmed.

AFFIRMED.

