CLAY, Circuit Judge.
This appeal concerns the district court’s grant of judgment on the pleadings in favor of Defendant General Motors. Plaintiffs’ complaint alleges four claims: *152 (1) equitable estoppel under federal common law and'ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); (2) breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); (3) enforcement of substantive rights under ERISA § 502(Z )(1)(B), 29 U.S.C. 1132(Z )(1)(B); and (4) recovery of benefits (denial of benefits) under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[1] The district court granted General Motors’ motion for judgment on the pleadings as to all claims and dismissed the case. For the reasons that follow, we AFFIRM.
BACKGROUND
I. Factual Background
Plaintiffs are retired autoworkers who were successively employed by General Motors (GM), Bosch, LLC, and Delphi Corporation. Plaintiffs were first employed by GM beginning in the late 1970s or early 1980s. When GM sold its diesel fuel injection business to Bosch in 1988, Plaintiffs began working there and stayed until the plant closed in 2003. When Bosch closed, Plaintiffs transferred to Delphi where they worked until the company declared bankruptcy and shut down its plant in 2006.
In 2006, GM, Delphi, and the United Autoworkers union (“UAW”) entered into an agreement titled the “UAW-GM-Delphi Special Attrition Progam” (“SAP”).[2] The SAP created a voluntary pre-retirement program under which Delphi employees that had accrued between twenty-seven and thirty years of service would cease reporting to work, but continue to receive monthly wages and accumulate credited service toward their pensions under the Delphi Pension Plan. In exchange, SAP participants would retire when they first accrued thirty years of credited service. Plaintiffs allege that they were offered the SAP “with the expectation and understanding that the pension amount would reflect their respective years of service including those years worked at GM, Bosch, and Delphi.” [R. 27,. Second Am. Compl., ¶ 24, PGID 141.] Plaintiffs opted into the SAP and retired when they reached thirty years of service. They contend that for a period of time after retirement they were paid pension benefits pursuant to the SAP, and those payments reflected their total time employed by all three companies.
In 2008, Plaintiffs received two letters from Delphi explaining that there was a dispute between GM, Delphi, and Bosch relating to their pension benefits. Delphi, when it offered the SAP to Plaintiffs, expected each of the three companies to consider Plaintiffs eligible for voluntary retirement with thirty years of credited service based on each Plaintiffs employment at all three companies. “Delphi also expected that each company would pay a pro-rata share of [each Plaintiff’s] '30 and out’ pension based on service accrued at each company.” [R. 2, Ex. E, Letters from Delphi, PGID 42.] Bosch, however, considered Plaintiffs to be separated employees who were not eligible for any portion of a “30 and out” pension from Bosch. The letter explained that Plaintiffs would receive a portion of their “30 and out” pension from both Delphi and GM, but that Bosch would likely consider Plaintiffs “eligible for a deferred vested benefit rather than a portion of a '30 and out’ pension.” [Id.] However, the letter assured Plaintiffs that the companies expected to resolve the issue. In the interim, Delphi *153 would provide Plaintiffs with an “administrative accommodation” — Delphi . would pay Bosch’s share of Plaintiffs’ pension benefits so they would continue to receive the same amount of pension benefits.. [Id. at PGID 43.].
In 2009, GM and Delphi entered into pension asset transfer negotiations whereby Delphi would transfer the assets and liabilities from the Delphi Pension Plan to the GM Pension Plan. On or about the time the official transfer, occurred, GM sent a letter to Plaintiffs explaining the transfer and stating that Plaintiffs’ pension benefits would be paid entirely from the GM Pension Plan. The letter unequivocally stated that the total gross amount of Plaintiffs’ pension benefits would not change.
Despite this assurance, Plaintiffs received letters from GM in 2010 indicating that the amount of their pension benefits would be reduced to reflect the years worked at Delphi and GM but not at Bosch. The letters explained that the assets and liabilities from the Delphi Pension Plan were transferred to the GM Pension Plan, but that the “transfer did not include the additional monies,” i.e. the administrative accommodation, “that Delphi was paying” to cover Bosch’s portion of Plaintiffs’ benefits. [R. 2, Exhibit F, Letter from GM Regarding Reduction, PGID 47.] The letter concluded, “Since GM does not have any obligation for non-GM hourly-rate employee pension plan credited service, GM cannot provide an additional pension payment on the same basis that Delphi decided to pay the benefit.” [Id.] GM determined that it would count Plaintiffs’ time employed at Bosch toward their eligibility for pension benefits, but it would not count that time in calculating the amount of the benefits due. Thus, it had “revised” Plaintiffs’ pension benefits • downward. [Id.] Plaintiffs allege that this reduction in their pension benefits was done in violation of the SAP.
II. Procedural History
Plaintiffs filed this suit against Bosch, Delphi, Fidelity Brokerage Services, LCC, GM, and the UAW bringing four claims: (1) equitable estoppel under federal common law and ERISA; (2) breach of fiduciary duty under ERISA; (3) enforcement of substantive rights under ERISA; (4) and recovery of benefits wrongfully denied under ERISA. As previously mentioned, Plaintiffs voluntarily agreed to dismiss Count III. Plaintiffs also agreed to dismiss Delphi, the UAW, and Fidelity as defendants, and the district court granted the motion to dismiss the claims against Bosch.[3] GM, the last remaining defendant, filed a motion for judgment on the pleadings relating to the three remaining claims. The district court granted the motion in its entirety and this timely appeal followed.
DISCUSSION
I. Plaintiffs’ Claims Are Rooted in the SAP
At the outset, we must make clear what this case is about. The gravamen of Plaintiffs’ complaint is that “GM made a written representation to all of the named Plaintiffs in the form of the SAP that the pension amount would be calculated using a formula that included their years of service at Bosch as well as Delphi and GM.” [R. 27, Second Am. Compl., ¶ 29, PGID 142.] Plaintiffs are not making any claim against GM under the GM Pension Plan. They say as much in their brief before this *154 Court: “The district court refused to see the SAP as an ERISA plan and thus found no violation of it. It also conveniently found no violation of the GM Pension Plan of which no violation was alleged in the first place.” [Docket No. 29, Appellants’ Br., § IV.C.] Plaintiffs’ filings before the district court also make clear that they do not allege a violation of the GM Pension Plan.
Plaintiffs appeal the district court’s dismissal of Counts I, II, and IV of their Second Amended Complaint. Count I, the equitable estoppel claim, does not allege a violation of the GM Pension Plan. Rather, Plaintiffs claim that “[t]he reduction of the Plaintiffs’ pension benefits is in direct violation of the plan[4] terms under the SAP.” [R. 27, Second Am. Compl., ¶ 56, PGID 145 (footnote added).] Count II is Plaintiffs’ fiduciary duty claim. They allege that GM, as a fiduciary with respect to the Plan, “has and had a duty to discharge its duties with respect to the Plan solely in the interest of the Plan participants and beneficiaries.” [Id. at ¶59, PGID 146.] Again, when Plaintiffs say “Plan,” they are referring to the SAP. [See id. at ¶ 5, PGID 136.] In Count IV, the denial of benefits claim, Plaintiffs allege, “Defendants reduction in Plaintiffs’ pension benefit amounts is in direct violation of the terms of the Plan.” [Id. at ¶ 69, PGID 148.] Throughout the operative complaint, Plaintiffs allege various ways in which GM violated provisions of the SAP, but they do not once allege that GM violated any provision of its own pension plan.
Similarly, in Plaintiffs’ response to GM’s motion for judgment on the pleadings, they make clear that all of their allegations arise from GM’s actions relating to the SAP. For example, they argue that GM’s “failure of fiduciary duty” is “based on the misrepresentations it made in the SAP.” [R. 54, Pis.’ Br. in Opp’n to Def. GM’s Mot. for J. on the Pleadings, § H.A., PGID 554.] For purposes of their estoppel claim, they allege that GM’s liability derives from the SAP, and they spend a full page in which they quote or reference the SAP no less than nine times. At one point, Plaintiffs claim that they “were told by Defendant GM multiple times that by accepting the SAP, their pension benefits would effectively reflect the pro-rata share of their combined time at Bosch, GM, and Delphi.” [Id. at PGID 560.] Thus, it is clear that Plaintiffs’ claims are rooted in the SAP, which they maintain is a freestanding pension plan subject to ERISA. [See, e.g., id. at PGID 562 (“The complaint clearly states, ‘On or around 2010, when Plaintiffs became aware that their pension benefits were going to be cut severely, the Plaintiffs challenged the reduction of then-pensions through the SAP.’ ”).].
II. The SAP Is Not an ERISA Plan
The threshold question this appeal then presents is whether the SAP is an ERISA plan. An ERISA employee pension benefits plan is statutorily defined as a:
plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
(i) provides retirement income to employees, or
(ii) results in a deferral of income by employees for periods extending to *155 the termination of covered employment or beyond,
regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.
29 U.S.C. § 1002(2)(A). To determine whether a “plan, fund, or program” qualifies as an ERISA employee benefit plan, we look to the surrounding circumstances and ask whether “a reasonable person [could] ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.” Hughes v. Zurz, 298 Fed.Appx. 404, 412 (6th Cir.2008) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1372 (11th Cir. 1982)); see also Int’l Res., Inc. v. New York Life Ins. Co., 950 F.2d 294, 297 (6th Cir.1991) (adopting the Dillingham test).
The SAP cannot be classified as an ERISA pension benefits plan in the first instance because it does not provide “retirement income.”[5] See 29 U.S.C. § 1002(2)(A)(i). It is a self-described “pre-retirement program” that incentivizes retirement by providing certain monthly wages for participating employees with at least twenty-seven but less than thirty years of service. [R. 1, Ex. A, SAP Program Docs., PGID 26.] Employees who elect to participate in the SAP must retire when they first accrue thirty years of service. Upon retirement, the SAP payments end, and the former employee receives pension benefits pursuant to the Delphi or GM Pension Plan. As the district court noted, the SAP does not provide for pension benefits separate from or in addition to those provided by Delphi or GM. Indeed, by its plain terms, the SAP does not provide for pension benefits at all.
The two letters sent by Delphi, upon which Plaintiffs rely, also fail to establish that the SAP is an ERISA plan. The May 21, 2008 letter refers to the SAP as a “pre-retirement program” and does not indicate that the SAP itself provided for any pension benefits. [R. 2, Ex. E, Letters from Delphi, PGID 42.] Instead, the letter explains that Delphi was under the mistaken assumption that each company (Delphi, GM, and Bosch) would base pension eligibility and benefit accrual determinations on each employee’s combined credited service from all three companies. The letter also explains that this same faulty assumption led Delphi to believe that each company would pay a pro-rata share of the employee’s “30 and out” pension. [M] Above all, however, the letter clearly delineates between the monthly wage payments made under the SAP and pension benefits paid upon retirement.
The July 22, 2008 letter similarly acknowledges that “under the 2006 Special Attrition Program,” Plaintiffs “entered into a pre-retirement program under which [they] would earn credited service and retire when [they] were first eligible for a '30 and out’ pension.” [Id. at 44.] The letter also informs Plaintiffs that their assets, liabilities, and pension benefit responsibilities relating to their accrued credited service at Bosch and GM are held in the Bosch Pension Plan, and those relating to their accrued credited service at Delphi are held in the Delphi Pension Plan. The July letter makes no mention of pension benefits being due or available under the SAP.
Because the SAP does not provide retirement income, it cannot be classified as an ERISA pension benefits plan. And *156 because the SAP is not an ERISA plan, Plaintiffs’ various claims alleging ERISA violations with respect to the SAP must fail.
Ultimately, the pension assets and liabilities pertaining to Plaintiffs’ Delphi credited service were transferred to GM, and Plaintiffs were paid their pension benefits pursuant to the GM Pension Plan, without accrual credit for the time employed at Bosch. The GM Plan is indisputably an ERISA plan. However, Plaintiffs explicitly disclaim that GM has violated any provision of its own pension plan. Even a liberal construction of Plaintiffs’ complaint — read as alleging a violation of the SAP, which itself functioned as an amendment to the GM Pension Plan — would not save it from dismissal. Contrary to the position taken by the dissent, the SAP cannot be read as a “gloss” on the GM Pension Plan because the SAP explicitly provides that none of its provisions “limit or in any way modify the provisions of any benefit plan or program.” [R. 1, Ex. A, SAP Program Docs., PGID 22.].
Although the dissent contends that Plaintiffs are making a claim against the GM Pension Plan, this is plainly not the case. As previously discussed, in Plaintiffs’ briefing before this Court, they unequivocally state that they have alleged no violation of the GM Pension Plan. In Plaintiffs briefing before the district court, they alleged that the “SAP outlines a pension benefit,” and they sought leave to amend their complaint to raise state law claims in the event the district court found that the SAP did “not qualify as an ERISA plan.” [R. 54, Resp. to Mot. for J. on the Pleadings, PGID 14.] It is thus clear that throughout this litigation, Plaintiffs’ claims have been rooted in the SAP, not the GM Pension Plan.
This appeal is before us as a result of the district court’s dismissal of Plaintiffs’ equitable estoppel, breach of fiduciary duty, and denial of benefits claims all brought pursuant to ERISA.[6] However, Plaintiffs have only alleged violations of the SAP. Because we conclude that the SAP is not an ERISA plan, and Plaintiffs have made clear that they do not allege a violation of the GM Pension Plan (the only ERISA plan even potentially at issue), Plaintiffs fail to state a claim under ERISA.
CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s grant of judgment on the pleadings in favor of GM.[7]

. During the course of the litigation in the court below, Plaintiffs agreed to dismiss Count III.

. Plaintiffs were, and continue to be, members of the UAW.

. The district court’s order dismissing the claims against Bosch is not a subject of this appeal.

. Plaintiffs allege that the SAP "is an employee benefit plan within the meaning of ERISA,” and define the term "Plan,” as used in their complaint, as the SAP. [R. 27, Second Am. Compl., ¶ 5, PGID 136.].

. Plaintiffs do not claim that the SAP qualifies as an ERISA plan under § 1002(2)(A)(ii), i.e., that the SAP resulted in a deferral of income extending until the termination of their employment. See 29 U.S.C. § 1002(2)(A)(ii).

. Plaintiffs brought their equitable estoppel claim under ERISA and federal common law. This Court has never recognized a federal common law estoppel claim separate and outside the bounds of ERISA in the context of a pension plan dispute, and Plaintiffs provide no compelling reason for us to do so now.

. We take this opportunity to note that we share the dissent's apparent concern for the hardship that Plaintiffs may be experiencing as a result of being issued significantly lower pension benefits than they previously received or anticipated receiving. If Plaintiffs’ corn-plaint and other submissions to this Court and the court below made the allegation that GM violated its own pension plan, then we may have been in accord with the dissent’s proffered resolution. However, when reviewing a grant of judgment on the pleadings, we are only permitted to liberally construe the complaint, we cannot rewrite it. See Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir.2008); League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir.2007).